HARRISON LAND COMPANY et al.

*v.*

CRUCIBLE STEEL COMPANY and TOWN OF HARRISON.

[Decided November 28th, 1913.]

1. Where certain contractors' rights of passage over a street extension, which the town was about to vacate, were only those of passage over a highway common to the public, and the injury to them in legal contemplation was not different in kind from that which every other citizen sustained, they were not entitled to sue to enjoin the vacation of such street.

2. Harrison city charter, section 56 (*P. L. 1873 p. 290*), authorizes the city council by ordinance to lay out, alter, or vacate any street then or thereafter laid out, and to take and appropriate for such purpose any streets or real estate, on making compensation to any owner or owners as thereinafter provided. Section 59 defines the method of ascertaining and making compensation in case of the taking of lands or real estate for opening, altering, widening, or straightening streets, not including vacation.—*Held*, that the town had power to vacate streets without affording compensation for injury to lands alleged to have been injured thereby, since the vacation constitutes only the release of a public right or easement over the lands.

3. Where an ordinance providing for the vacation of an extension of C. street expressly declared that the vacation was made subject to an agreement by the prior owners of adjoining lands, including complainant, that the extension should be open for their use, whether the ordinance, if passed, would release or destroy the rights of the parties under the agreement as against each other, was a legal question which must first be determined by the courts, and could not be determined on an application for an injunction to restrain the passage of the proposed ordinance.

4. A court of equity will not enjoin the passage of ordinances which are within the scope of the powers of the municipality.

5. Where a city ordinance vacating a street extension is alleged to be invalid because of fraud, or passed in the interest of private concerns, and to constitute an abuse of legislative discretion, the remedy of persons suffering no injury to private property is by *certiorari* after the ordinance is passed, and not by injunction against its passage.

On application for preliminary injunction. Heard on bill, supplemental bill and affidavits.

*Messrs. E. A. & W. T. Day* and *Mr. Chauncey G. Parker*, for the Harrison Land Company.

*Messrs. Munn & Church*, for Booth & Flinn, Ltd.

*Messrs. Peirce & Hoover*, for the defendant Crucible Steel Company.

*Messrs. Michael T. & Hugh C. Barrett*, for the town of Harrison.

EMERY, V. C.

The standing of Harrison Land Company, the sole original complainant in this case, is based on its right to equitable relief by preliminary injunction as necessary to protect its property from being taken by the defendant municipality without compensation on its vacation of a street. The bill prays an injunction against the passage by the common council of an ordinance vacating portion of a street sixty feet wide, called Cumberland street, lying between Fourth street and lands now or formerly occupied by the Pennsylvania Railroad Company, as the lessee of the United New Jersey Railroad and Canal Company, about two hundred and thirty-seven feet east from Fourth street, at which point Cumberland street, so far as it is a recognized public street, now terminates. From this location, where the public street terminates, the Harrison Land Company, by virtue of a written agreement made on May 17th, 1901, between the United New Jersey Railroad and Canal Company of the first part and the Crucible Steel Company of the second part, and the executors of Henry Young (complainant's predecessors in title) of the third part, and the devisee of William H. Draper of the fourth part, have a right of way over a strip of land sixty feet in width, an extension of Cumberland street easterly across the lands of all the parties to the agreement. The lands of the United railroad and canal company immediately adjoined the easterly terminus of Cumberland street as laid out, and the lands of Young's estate (now complainants'), adjoined the United Companies' lands on the east. This strip of land,

sixty feet in width, called by the parties in the agreement "an extension of Cumberland street," was, by the agreement, "dedicated and appropriated as a road." The agreement recited that lands owned by all of the parties were part of a tract known as the Preston tract, that no public streets or highways existed on these tracts owned by the parties, that the Young estate and Draper estate claimed rights of way over the United Companies' property in the Preston tract, and that it was for the interest of all the parties "that some recognized way to and through such properties be established and that all claims of the parties to private rights of way over such properties or any of them be extinguished," and, in consideration thereof, the parties covenanted and agreed each with the others and with each

"that a strip of land sixty feet in width, an extension of Cumberland street easterly across the said lands of the parties hereto, be and the same is hereby dedicated and appropriated as a road, the strip of land so dedicated beginning east of Fourth street, at the end of Cumberland street as laid out on the Gilbert map, and running thence easterly between the northerly and southerly lines of Cumberland street produced across the lands of the parties," &c.

The parties of the second, third and fourth parts, it was further stated, "do hereby release and surrender to said party of the first part (the United Companies) all rights of way over the Preston tract or any part of it;" and it was further agreed that any of the parties to the agreement might fill in and grade the said road, and that the agreement should be binding upon successors, heirs and assigns. There has been no acceptance by the public of this extension of Cumberland street made by the parties, and the rights of the complainant over the extension of Cumberland street are derived solely under the agreement and by virtue of its express or implied covenants. But since the execution of the agreement, and by reason of the release thereby of any right of way to other public streets, complainant Land Company now has no right of way or access other than through this extension to any public highway or street of the town. Its property, however, has access to a river front on the Passaic river. The town of Harrison, by ordinance now on third and final reading before its common council, proposes to vacate this

portion of Cumberland street two hundred and thirty-seven feet from Fourth street, the vacation, however, to be "subject to the agreement made the 17th day of May, 1901," between the parties above stated. Proceedings for the vacation were instituted by the application of the Crucible Steel Company, a party to the agreement, which has purchased and now owns also part of the United Companies' land north of the centre line of the extension, and also owns or controls the lands covered by the street to be vacated. For the vacation of Cumberland and other streets named in their application, the Crucible Steel Company offered to pay to the town of Harrison $8,000, the town to give in return a quitclaim deed on all the streets vacated. Since filing the original bill, the streets other than Cumberland have been vacated, and the full sum of $8,000 has been paid to the town by the Crucible Steel Company, which also, in connection with this vacation of the other streets, agreed to defend the present suit and to bear the entire expense of defending it, whether Cumberland street should or should not be vacated. These facts are set up in the supplemental bill.

After the filing of the bill Booth & Flinn, Limited, contractors, who had a previous permit from the Pennsylvania Railroad Company to deposit waste material on its lands lying on the southerly side of this extension of Cumberland street, procured from the Harrison Land Company a like permit to fill in their lands and also permitting the contractors as the agent of the land company to fill in and grade the street known as Cumberland street or any portion thereof. Booth & Flinn, Limited, have a contract for the construction of a portion of the sewer for the Passaic valley sewerage commissioners, and the securing of space for the deposit of material is a material convenience in this construction. At the time of securing the Pennsylvania permit, May 20th, 1913, they were assured that Cumberland street was a public street and might be used by them for access to the lands of the railroad company located on its extension. The agreement with the Harrison Land Company, however, was made after the bill was filed. All the lands lying east of Fourth street, including the portion of Cumberland street laid out as a public street, are low-lying, marshy lands, wholly unimproved.

27

The filling up and grading provided for by these permits will do something toward preparing them for useful occupation, as well as materially accommodate the contractors. The contractors were allowed to intervene as co-complainants and join in the application for preliminary injunction. Complainants seek injunction against the town from vacating the street and· executing a deed therefor to the Crucible Steel Company, and that the steel company may be restrained from preventing the use of Cumberland street. So far as the contractors' rights of passage over Cumberland street are the rights of passage over a highway which is common to the public, and the injury to them, in legal contemplation, is not different in character from that which every other citizen sustains, they have no standing for special protection by injunction. *H. B. Anthony Shoe Co.* v. *West Jersey Railroad Co.* (*Court of Errors and Appeals, 1898*), *57 N. J. Eq.* (*12 Dick.*) *607, 617;* *Young* v. *Pennsylvania Railroad Co.* (*1905*), *72 N. J. Law* (*43 Vr.*) *94;* *Grey, Attorney-General,* v. *Greenville and Hudson R. Co.* (*1900*), *59 N. J. Eq.* (*14 Dick.*) *372, 377.* They must, on this application, stand therefore on their rights of access derived from the Harrison Land Company and depend upon its rights to enjoin the passage of the ordinance. As to these, I reach the following conclusions:

*First.* So far as the municipality, the town of Harrison, is concerned, the complainant's right to a preliminary injunction depends upon the power of the municipality to vacate a portion of Cumberland street without first making compensation to complainant. The charter (*P. L. 1873 p. 265 § 56*) authorizes the common council by ordinance to lay out, alter, widen or straighten and also to vacate any street then or thereafter laid out, "and to take and appropriate for such purpose any lands and real estate, upon making compensation to the owner or owners thereof, as is hereinafter mentioned and provided." The subsequent section of the charter (59) defining the method of ascertaining and making compensation, extends only to the taking and appropriating of lands or real estate for "opening or altering, widening or straightening streets," and does not include "vacating." Complainant's land is apparently damaged or in-

juriously affected by the vacation of the street, but its land is neither taken nor appropriated, and therefore does not seem to come within the provision in section 56 for compensation. Unless such provision is expressly directed by statute to be made, streets may, under our constitution, be vacated without compensation. *Dodge* v. *Pennsylvania Railroad Co.* (*Vice-Chancellor Van Fleet, 1887*), *48 N. J. Eq.* (*16 Stew.*) *351, 355;* affirmed on appeal for reasons stated, *45 N. J. Eq.* (*18 Stew.*) *366* (*1889*); *Newark* v. *Hatt* (*Court of Errors and Appeals, 1910*), *79 N. J. Law* (*50 Vr.*) *552; Newark & B. R. Co.* .v. *Montclair* (*1913*), *84 N. J. Law* (*55 Vr.*) *46.* In the vacation of streets, lands located on the street vacated are not in fact "taken and appropriated" by the municipality, which, on the contrary, only releases a public right or easement over the lands, and therefore it may be well claimed that the provisions of section 59 as to the method of compensation and proceedings for "lands taken" intentionally and properly excluded proceedings for the vacation of streets. And, in my judgment, this omission, construed in connection with section 56 extending the power for compensation only to "lands taken and appropriated," excludes complainant's lands from the protection of the provision.

The above authorities, in my judgment, control this case on this point, and the circumstances strongly urged by complainant, that the vacation of this portion of Cumberland street will cut off their access from any public street, if it be true, does not relieve the case from the operation of the rule affirmed by these decisions in relation to the power of municipalities to vacate public streets without compensation where none is provided by statute. The municipal authorities were not parties to this agreement by which complainant land company and others gave up the private ways from their lands to other streets. They cannot, therefore, merely for the reason that complainants have now no other access be subject to any equities as to compensation on the vacation of a street to which complainant had no right of access previous to the agreement, and whose rights of access thereto rest only on the private agreement. The fact that the private ways claimed by the complainants and released by the agreement did lead to other public streets, is important in an-

swer to the present claim of a right to compensation for vacation, arising on the special ground of cutting off the sole access. But complainant may not, by the passage of the ordinance in question, be certainly cut off from access to public streets, and for two reasons—*first,* complainant's right of access to the entire . width of the portion of Cumberland street proposed to be vacated, which adjoins the land dedicated as a road, exists under the agreement set out in the bill, and complainant claims that by virtue of this express agreement it has, as against all persons bound thereby, a right to have the dedicated road constitute "an extension of Cumberland street" as it then existed. Now, the ordinance of vacation expressly provides that the vacation is made subject to this agreement, and the question fairly arises, whether the vacation made with this express limitation does release or destroy the right which the parties under the agreement had, as against each other, to have Cumberland street continue as a public street; and there may also be a question whether a vacating ordinance thus restricted is a proper exercise of the power of vacating streets. But these are questions of legal right, first subject to review in the courts of law, and cannot be decided in this court on this application which involves purely the right to a preliminary injunction against passing the ordinance as proposed. The power to vacate streets is, in its general nature, a legislative power, and the proposed exercise of it in this instance is purely legislative. It is well settled, as a general rule, that a court of equity will not enjoin the passage of ordinances which are within the scope of the powers possessed by a municipality. *Cape May, &c., Railroad Co.* v. *City of Cape May (Vice-Chancellor Van Fleet, 1882), 35 N. J. Eq. (8 Stew.) 419, 421; 21 Am. & Eng. Encycl. L. 951 (note 1),* citing cases. In the *second* place, the title in fee to a portion of Cumberland street proposed to be vacated is now in the defendant the Crucible Steel Company, one of the parties to the agreement set out in the bill. Complainant's right as against the Crucible Steel Company to the access over the lands included within the vacated street for ingress and egress to all parts of this "recognized way" to and through Cumberland street of which the road or way was to be the extension, may remain, not-

withstanding the vacation. This question will properly come up for adjudication, not as the necessary result of the vacation of the street, but as the result of the obstruction of the complainant's access over the vacated street to the only public street, if the street be vacated and such obstruction made by the Crucible Steel Company.

No preliminary injunction can therefore be granted in this case, and in view of the above decisions (*H. B. Anthony Shoe Co.* v. *West Jersey Railroad Co., &c.*), my present view is that in the absence of any special property right of the complainant which would be taken or appropriated by vacation of the street, the passage of the ordinance cannot be enjoined by this court, even at final hearing. The claim that the passage of the ordinance is solely in the private interest and benefit of the Crucible Steel Company, and for the purpose of allowing it to occupy and use the street for its private purposes and upon a money consideration paid therefor, is a claim or contention based on the rights of the public to an exercise of the power of vacation in the public interest and not for private interest. After the vacation is made, the special interest which the complainants have in the continuance of the public street as owners of lands injuriously affected thereby may be sufficient to allow them to question the vacation by *certiorari*. *Beecher* v. *Newark, 64 N. J. Law (35 Vr.) 475; affirmed on appeal, 65 N. J. Law (36 Vr.) 307 (1900).*

Under our practice, when the validity of an ordinance, contract or other act, within the power of the municipality, is attacked, because of fraud or other improper motive, or abuse of legislative descretion, such as being solely for the benefit of private interest, it has always been by *certiorari*, removing the complete act which is questioned to the supreme court. After the act, and generally not until then, can the question as to the character and operation of the motives for the exercise of admitted powers be fairly at issue or tried, and in all of the New Jersey cases brought to my attention, where no private property was entitled to protection by injunction, the issue of the invalidity of the ordinance upon any of these grounds was raised, tried and decided on *certiorari* proceedings, which either

affirmed or set aside entirely the ordinance to all the public. *North Baptist Church* v. *Orange (1891), 54 N. J. Law (25 Vr.) 111,* is an instance where the validity of an ordinance opening a street was questioned after its passage on the ground that it was improperly induced by the promise of a citizen to pay part of the expense, and in many cases the supreme court, after the adoption of the ordinance or contract, has passed on the question whether it was an honest exercise of their discretionary legislative power. *Ferguson* v. *Passaic (1897), 60 N. J. Law (31 Vr.) 404; Kraft* v. *Board of Education (1902), 67 N. J. Law (38 Vr.) 512, 514.*

The control in this case of the passage of the ordinance by an injunction dependent on a decision beforehand as to the motives for its passage, would, in my judgment, be an unauthorized interference with the exercise of the legislative power given to the municipal body.